# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROFESSIONAL SPORT SERVICE FI OY<br><br>Petitioner,<br><br>v.<br><br>PUCK AGENCY LLC, JMG SPORTS AGENCY INC.<br><br>Respondents. | Civil Action<br><br>HON. KENNETH M. KARAS, U.S.D.J.<br><br>Case No: 24-CV-2022 (KMK)<br><br>**JUDGMENT**<br>**CONFIRMING ARBITRATION AWARD**<br>**AND GRANTING RELATED RELIEF** |

**THIS MATTER** having come before this Court on the Petitioner, Professional Sport Service Fi Oy's ("the Petitioner"), Petition and separate motion ("Motion") to confirm the January 4, 2024 award of the Finland Arbitration Institute ("FAI") in case number FAI 15/23 (the "Second Arbitration Award"), finding JMG Sports Agency Inc. ("JMG") and Puck Agency LLC ("Puck") (collectively, "Respondents") jointly and severally liable, for (1) all amounts previously awarded against Puck in case number FAI 23/ 2018 (the "First Arbitration Award") (which award was confirmed by Judgment ("First Judgment") of the Southern District of New York in the matter bearing Docket Number 19-CV-05904); and (2) additional amounts related to claims that accrued after the Southern District of New York confirmed the First Arbitration Award; and

This Court having found that Respondents are bound to a written Agreement containing a binding Arbitration Provision, dated July 30, 2012 (the "Agreement"), and this dispute having been submitted to an FAI arbitrator who, upon hearing with proper notice to all parties, entered the Second Arbitration Award; and

This Court having jurisdiction to confirm and enforce arbitration awards pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitration Act, 9 U.S.C. § 201 et seq.; and

The Court having considered the written submissions of Petitioner, and any opposition thereto; and for good cause shown;

It is on this _____7th_____ day of _____June_____, 2024

**ORDERED, ADJUGED AND DECREED** as follows:

1. The Second Arbitration Award against the Respondents, attached hereto as **Exhibit "A"**, is hereby confirmed in its entirety.

2. Judgment is hereby entered against Respondent Puck Agency LLC individually, and Judgment is hereby entered against Respondent JMG Sport Agency Inc., individually, and said Judgment is hereby entered jointly and jointly and severally as against both Respondent Puck Agency LLC and Respondent JMG Sports Agency Inc., and in favor of Petitioner Professional Sport Service Fi Oy, in the total amount of **$887,187.55**, with further and applicable pre-judgment and post-judgment interest as the case may be, and detailed as follows:

    a. All amounts awarded by the arbitrator in the First Arbitration Award, which totaled **$323,327.58** as of May 31, 2019, with applicable post-judgment interest continuing to accrue as governed by U.S.C. §1961. A breakdown of that award is as follows:

        i. **$83,910.26**, which represents the original award of $76,616.00 plus 5% contract rate interest from July 5, 2017, through May 31, 2019, with interest continuing to accrue until payment is made.

        ii. **$179,691.31** which represents the original award of $171,919.60 plus 5% contract rate interest from July 5, 2018, through May 31, 2019, with interest continuing to accrue until payment is made.

iii. **$48,015.07** which represents the award of $46,326.99 for costs and expenses incurred by Petitioner in connection with the First Arbitration Award, together with delay interest of 7% in the amount of $1,688.08 pursuant to Section 4(1) of the Finnish Interest Act from one month from the date of the First Arbitration Award through May 31, 2019, with interest continuing to accrue until the Amount has been paid in full.

iv. **$11,710.94** which represents the fees and costs paid to the arbitrator who entered the First Arbitration Award.

b. All amounts as set forth and awarded in the Second Arbitration Award, as a result of Petitioner's newly accrued claims arising under the Agreement, after the First Arbitration Award, which are as follows:

i. **$160,322.50** plus contract rate interest of 5% on this amount from July 5, 2019, until payment is made;

ii. **$131,515.00** plus contract rate interest of 5% on this amount from July 5, 2020, until payment is made;

iii. **$90,962.50** plus contract rate interest of 5% on this amount from July 5, 2021, until payment is made;

iv. **$58,515.62** plus contract rate interest of 5% on this amount from July 5, 2022, until payment is made;

v. **$50,078.12** plus contract rate interest of 5% on this amount from July 5, 2023 until payment is made;

vi. **$33,978.42** - which consists of the €30,000 award for reimbursement of costs of arbitration including but not limited to the arbitrator fee advanced by Petitioner, multiplied by 11.5% (Finnish Interest Act Interest Rate for Arrear Payments) which at an annualized interest accrual totals €3450 in interest for one year, with said number divided by 360 days, equaling a per diem rate of €9.583. The per diem rate is multiplied by the 120 days elapsed between February 4, 2024 and June 3, 2024, totaling €1,150 in applicable interest. Addition of the €30,000 award plus €1,150 interest totals €31,150, which when converted to United States Dollars at the applicable exchange rate on June 3, 2024 equals $33,978.42. Delay interest pursuant to Section 4(1) of the Finnish Interest Act runs from one month from the date of the Arbitration Award until the amount has been paid in full; and

vii. **$38,487.81** – which consists of the €33,981.40 award to Petitioner for

legal and other costs and expenses incurred in connection with the arbitral proceeding, multiplied by 11.5% (Finnish Interest Act Interest Rate for Arrear Payments) which at an annualized interest accrual totals €3,907.86 in interest for one year, with said number divided by 360 days, equaling a per diem rate of €10.86. The per diem rate is multiplied by the 120 days elapsed between February 4, 2024 and June 3, 2024, totaling €1,302.62 in applicable interest. Addition of the €33,981.40 award plus €1,302.62 interest totals €35,284.02, which when converted to United States Dollars at the applicable exchange rate on June 3, 2024 equals $38,487.81. Delay interest pursuant to Section 4 (1) of the Finnish Interest Act runs from one month from the date of the Arbitration Award until the amount has been paid in full.

3. Judgment for the amounts and the pre-judgment interest described above is hereby entered against Respondent Puck Agency LLC individually, and Judgment is hereby entered against Respondent JMG Sport Agency Inc., individually, and said Judgment is hereby entered jointly and severally as against both Respondent Puck Agency LLC and Respondent JMG Sports Agency Inc., and in favor of Petitioner Professional Sport Service Fi Oy.

4. Pursuant to Local Civil Rule 54.1, Petitioner may file a bill of costs within the applicable time period, setting forth costs and fees associated with this matter and sought to be recoverable herein.

5. The Clerk of Court is respectfully directed to close this case.

**Dated**: _____June 7, 2024_____

_____

HON. KENNETH M. KARAS, U.S.D.J

# Exhibit A

Ad-hoc Arbitration in Helsinki                    FAI 15/2023

# Final Award

**Professional Sport Service Fi Oy**                    **(Claimant)**
Pinsiöntie 910, 39150 Pinsiö, Finland

Represented by
Urpo Väänänen, attorney at law, ASIANAJOTOIMISTO VÄÄNÄNEN OY
Kulosaaren Puistotie 50, 00570 Helsinki, Finland

vs

**Puck Agency LLC**                    **(Respondent 1)**
One Sunset Drive North, Chappaqua, New York 10514
P.O. Box 87, Chilmark, New York 02535
United States of America

**JMG Sports Agency Inc**                    **(Respondent 2)**
One Sunset Drive North, Chappaqua, New York 10514
P.O. Box 87, Chilmark, New York 02535
United States of America

before the Sole Arbitrator

Ms Raphaëlle Favre Schnyder

Place of Arbitration: Helsinki, Finland



## Table of Content

A.  The Parties and their Representatives ............................................................... 3

 1.  Claimant............................................................................................... 3

 2.  Respondents........................................................................................ 3

B.  The Sole Arbitrator.................................................................................... 4

C.  The Arbitration Agreement and the Governing Law........................................... 4

D.  Place of Arbitration.................................................................................... 5

E.  Language of the Arbitration.......................................................................... 5

F.  Applicable Procedural Rules ........................................................................ 5

G.  Prodecural History ..................................................................................... 5

H.  Summary of the Dispute.............................................................................. 7

I.  The Parties' Prayers for Relief ...................................................................... 7

 1.  Claimant's Prayer for Relief...................................................................... 7

 2.  Respondents' Prayer for Relief.................................................................. 9

J.  Considerations.......................................................................................... 9

 1.  Liability of Puck and/or JMG for the Payment of the Sums Awarded in the First Arbitration................................................................................................. 9

 2.  Claimant's Entitlement to Post-expiration Commission for the Hockey Seasons 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023........................... 14

K.  Costs of the Arbitration.............................................................................. 24

L.  Dispositive Section of the Final Award ........................................................... 27



## A.   THE PARTIES AND THEIR REPRESENTATIVES

### 1.   Claimant

1   The claimant is Professional Sport Service Fi Oy and is hereinafter referred to as **"Claimant"** or **"PSS"**.

2   Claimant's contact details are:

Pinsiöntie 910
39150 Pinsiö
Finland
Phone:          +358500599338
Email:          jarmo.kork@pssfi.com

3   Claimant is represented in these arbitration proceedings by:

Urpo Väänänen, attorney at law
ASIANAJOTOIMISTO VÄÄNÄNEN OY
Kulosaaren Puistotie 50
00570 Helsinki
Finland
Phone:          +358405028966 or +358-104202200
Email:          urpo.vaananen@vaananen-law.fi

### 2.   Respondents

4   The respondent 1 is Puck Agency LLC and is hereinafter referred to as **"Respondent 1"** or **"Puck"**.

5   Respondent 1's contact details are:

One Sunset Drive North
Chappaqua, New York 10514
United States of America
Postal address: P.O. Box 87
                Chilmark, New York 02535
                United States of America
Phone:          +1 914-629-2888 or +1-914-432-0050
Email:          jmg@puckagency.com
                ra@puckagency.com



6   Respondent 1 is not represented in these arbitration proceedings.

7   The respondent 2 is JMG Sports Agency Inc. and is hereinafter referred to as **"Respondent 2"** or **"JMG"**.

8   Respondent 2's contact details are:

One Sunset Drive North
Chappaqua, New York 10514
United States of America
Postal address: P.O. Box 87
         Chilmark, New York 02535
         United States of America
Phone:    +1 914-629-2888 or +1-914-432-0050
Email:    jmg@puckagency.com

9    Respondent 2 is not represented in these arbitration proceedings.

10    Respondent 1 and Respondent 2 are hereinafter together referred to as "**Respondents**". Claimant and Respondents are hereinafter together referred to as the "**Parties**" or individually as a "**Party**".

## B.  THE SOLE ARBITRATOR

11    Upon Claimant's request of 30 March 2023 to appoint a sole arbitrator, on 15 June 2023, the Board of the Finland Arbitration Institute (the "**FAI**") appointed as Sole Arbitrator:

Ms Raphaëlle Favre Schnyder
Barandun AG
Mühlebachstrasse 25, P.O. Box
8024 Zurich
Switzerland
Phone:    +41 44 266 56 56
Email:    raphaelle.favre@barandun-law.ch

## C.  THE ARBITRATION AGREEMENT AND THE GOVERNING LAW

12    Claimant and Respondent 1 concluded an agreement for the representation of ice hockey players signed on 14 June 2012 and 30 July 2012 (the "**Agreement**"). Para. 2.10. of the Agreement provides as follows:

*"2.10. Governing law and the place of litigation*

*This Agreement is governed by and shall be construed in accordance with the laws of Finland, without reference to its conflict of law principles.*

*Any dispute arising out of this Agreement shall be settled amicably by the parties through negotiations.*

*If the parties fail to reach settlement within 30 days from the date of receipt of written notice calling for the amicable settlement from a party, disputes arising out of or in connection with this Agreement shall be settled in negotiations between the*

4 | 28

*Parties. In the event no agreement can be reached through negotiations, disputes shall be exclusively and finally settled by a sole arbitrator in Helsinki, Finland. If the Parties fail to agree on the appointment of the arbitrator within thirty (30) days after the receipt by either party of a written request for such appointment, the arbitrator shall be appointed by the Arbitration Committee of the Central Chamber of Commerce of Finland. The arbitrator shall issue the award within six (6) months of the appointment, unless there are compelling reasons to the contrary."*

## D.   PLACE OF ARBITRATION

13   The place of arbitration is Helsinki, Finland, as agreed by the Parties in para. 2.10. of the Agreement and in application of Section 24(1) of the Finnish Arbitration Act (the "**FAA**").

## E.   LANGUAGE OF THE ARBITRATION

14   The Agreement includes no choice of language of arbitration.

15   In accordance with Section 26 of the FAA, considering that the documents submitted in these proceeding are in English, including the Notice for Arbitration, the Request for Arbitration and the Agreement that is subject to the dispute, the Sole Arbitrator determined the language of the arbitration to be English.

## F.   APPLICABLE PROCEDURAL RULES

16   This arbitration proceeding is governed by Sections 2-50 of the FAA (as *lex arbitri*), and the Specific Procedural Rules issued by the Sole Arbitrator after consultation with the Parties.

## G.   PRODECURAL HISTORY

17   On 28 February 2022, Claimant submitted a Notice of Arbitration to Respondents' email address. Respondents did not submit an answer to Claimant's Notice of Arbitration.

18   On 3 April 2023 Claimant filed a Request for Arbitration ("**Request**") including Annexes 1-3 with the FAI requesting the appointment of the sole arbitrator.

19   By letter of 11 April 2023, the FAI informed Respondents that Claimant had filed a Request for the appointment of a sole arbitrator and provided them with a copy of the Request. In addition, the FAI invited Respondents to submit an Answer to the Request within 15 days from the receipt of said letter.

20   By letter of 17 May 2023, the FAI informed the Parties that Respondents had not submitted an Answer to the Request within the set time limit. Accordingly, the matter would be referred to the meeting of the Board of the FAI on 15 June 2023.

21    By letter of 6 July 2023, the FAI informed the Parties that at its meeting of 15 June 2023, the Board of the FAI had decided to appoint Raphaëlle Favre Schnyder as Sole Arbitrator and provided them with the Sole Arbitrator's statement of independence as well as her CV. Also on 6 July 2023, the file was transmitted to the Sole Arbitrator.

22    By letter dated 20 July 2023, the Sole Arbitrator invited the Parties to inform her on their availabilities for a case management conference (the "**Case Management Conference**" or "**CMC**") by 31 July 2023. In same letter, the Sole Arbitrator invited Respondents to submit an Answer to the Request for Arbitration also by 31 July 2023 and informed the Parties that the advance on costs will be computed on the basis of an hourly rate of CHF 500. The letter was sent to the Parties by email and to Respondents also by courier service and delivered on 21 July 2023.

23    By email dated 28 July 2023, Claimant confirmed its availability for the CMC on the two suggested dates, i.e., 23 August 2023 at 15 CET and 24 August 2023 at 15 CET. Respondents did not submit their Answer to the Request for Arbitration, nor inform the Sole Arbitrator about their availabilities for the CMC by 31 July 2023.

24    On 18 August 2023, the Sole Arbitrator issued the Constitutional Order (Procedural Order No 1) and provided the Parties with a draft of the Specific Procedural Rules to be discussed at the Case Management Conference. In addition, the Parties were informed that the Case Management Conference was scheduled for 24 August 2023 at 3:00 pm CET.

25    On 24 August 2023, the Case Management Conference took place via videoconference, i.e., online. Respondents did not dial in although the Sole Arbitrator and Claimant waited for about ten minutes to start the discussions.

26    On 25 August 2023, the Sole Arbitrator issued the Specific Procedural Rules (Procedural Order No 2) and the Procedural Timetable No 1 (Procedural Order No 3).

27    On 21 September 2023, Claimant filed the Statement of Claim ("**SoC**") together with the exhibits C-1 to C-11 and the witness statement of Jarmo Kork CWS-1.

28    By the Procedural Order No 4, issued by the Sole Arbitrator on 30 October 2023, the steps 4 to 10 of the Procedural Timetable No 1 (Procedural Order No 3) were stricken and the Parties were invited to submit their cost submissions by 10 November 2023. Claimant was also invited to substitute for Respondent and to pay a deposit as an advance on costs in the amount of CHF 15,000 until 10 November 2023.

29    On 2 November 2023, Claimant paid the advance on costs in the amount of CHF 15'000 in substitution for Respondents and on 10 November 2023, Claimant submitted its Cost Submission.

## H.  SUMMARY OF THE DISPUTE

30    In 2012, Claimant and Puck concluded the Agreement concerning the representation of ice hockey players. Under the Agreement Claimant's task was primarily to recruit and refer ice hockey players in Finland ("**RF clients**") to Puck. Puck was responsible among others for the negotiation of player contracts, servicing clients in North America and Europe, full tax preparation and counseling, promotional endorsements, billing and financial and investment advice while the RF clients are living and playing North America. In return for its efforts Claimant was entitled to receive commission in the amount of 50% of the player contract fee and endorsement fees received by Puck for the RF client as long as the RF client is represented by Puck (Art. 2.4.1. of the Agreement).[1]

31    After the expiry of the Agreement Claimant and Puck disagreed on Puck's obligation to pay Claimant (post-expiration) commission. On 22 November 2018 the sole arbitrator Henrik Fieber to whom the dispute had been submitted (the "**First Arbitration Proceedings**") issued a final award (the "**First Award**") ordering Puck among others to pay Claimant USD 76,616 and USD 171,919.60 as (post-expiration) commission.[2]

32    As Puck has not paid Claimant the amounts awarded in the First Award, nor any subsequent commission allegedly owed to Claimant Claimant submitted a request for the appointment of the sole arbitrator with the FAI and provided Puck with a Notice of Arbitration.

## I.  THE PARTIES' PRAYERS FOR RELIEF

### 1.  Claimant's Prayer for Relief

33    In its SoC Claimant requested the following:

*"Professional Sports Service Fi Oy claims that Sole Arbitrator obligates JMG Sports Agency Inc., jointly and severally with Puck Agency LLC, to pay the damages already awarded in arbitration FAI 23/2018, 22 of November 2018, namely:*

- *USD 76,616.00 as well as 5 % interest on this amount from 5 of July 2017 until payment is made, to compensate Claimants for commissions during the 2016-17 hockey season,*

- *USD 171,919.60 as well as 5 % interest on this amount from 5 of July 2018 until payment is made, to compensate Claimants for commissions during the 2017-18 hockey season,*

---

[1]    Exhibit C-1.
[2]    Exhibit C-2.



- *10.266,75 euro's, the sum represents 25 % of 40.067,00 euro's of the Arbitrator, Judge Fieber's fees and cost's with interest pursuant the section 4 (1) of the Finnish Interest Act from 30 days after this award until payment is made,*

- *40.611,25 euro's for costs and expenses incurred by Professional Sports Services Fi Oy of the previous arbitration proceeding with interest pursuant the section 4 (1) of the Finnish Interest Act and from 23 December 2018 until payment is made*

  *and*

- *Sole Arbitrator declares that JMG Sports Agency Inc., jointly and severally with Puck Agency LLC, is liable to pay commissions to Professional Sports Service Fi Oy for NHL players Pekka Rinne, Erik Haula, Vili Saarijärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki, Sebastian Repo and Sami Niku;*

  *and in addition*

- *The Sole Arbitrator orders the Respondent companies jointly and severally to pay the Commission as follows:*

- *USD 160,322.50 as well as 5 % interest on this amount from 5 of July 2019 until payment is made, to compensate Claimants for commissions during the 2018-2019 hockey season,*

- *USD 131,515.00 as well as 5 % interest on this amount from 5 of July 2020 until payment is made, to compensate Claimants for commissions during the 2019-2020 hockey season,*

- *USD 90,962.50 as well as 5 % interest on this amount from 5 of July 2021 until payment is made, to compensate Claimants for commissions during the 2020-2021 hockey season,*

- *USD 58,515.62 as well as 5 % interest on this amount from 5 of July 2022 until payment is made, to compensate Claimants for commissions during the 2021-2022 hockey season,*

- *USD 50,078.12 as well as 5 % interest on this amount from 5 of July 2023 until payment is made, to compensate Claimants for commissions during the 2022-2023 hockey season;*

- *Orders both Respondents jointly and severally alone bear all the costs of the arbitration, including but not limited to the arbitrator's fee, together with delay interest pursuant to the Section 4 (1) of the Finnish Interest Act from one month of the date of the Award until the amount has been paid in full,*

- *Orders both Respondents jointly and severally to reimburse all Claimant's legal and other costs and expenses incurred by PSS in connection with this arbitral proceeding together with delay interest pursuant the Section 4 (1) of the Finnish Interest Act from one month of the date of the Award until the amount has been paid in full."*

## 2.  ~Respondents' Prayer for Relief

34    Respondents have submitted no prayers for relief.

## J.    CONSIDERATIONS

35    Based on Claimant's prayer for relief the Sole Arbitrator will first consider if Puck and/or JMG may be held, jointly and severally, liable for the payment of any of the sums claimed by Claimant. Then, the Sole Arbitrator will contemplate whether Claimant is entitled to receive post-expiration commission for the hockey seasons 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023 as well as for the named players on top of the sums awarded in the First Arbitration Proceedings. Finally, the Sole Arbitrator will consider whether Claimant can request the payment of arbitration costs incurred during the First Arbitration.

### 1.    Liability of Puck and/or JMG for the Payment of the Sums Awarded in the First Arbitration

#### 1.1    Claimant's Position

36    Claimant's position may be summarized as follows:

37    Although having been ordered to in the First Award, the First Award having become enforceable, and despite Claimant having sent a Notice of Arbitration to Respondents Respondent 1 has not paid any of the damages awarded to Claimant in the First Award.[3]

38    Pursuant to its para. 2.11 the Agreement may be assigned by the Parties to their successor and shall be binding on any successor. Such successor shall expressly assume the party's obligations under the Agreement.[4]

39    At least since 2016-2017, i.e., 19 April 2017, Jay Grossman requested his players to pay the players' agent fees to another Jay Grossman, New York-based company namely Respondent 2, instead of Respondent 1, and the according Bank of America bank account ending with the numbers -4625. In addition, Jay Grossman

---

3    SoC paras. 5-9, Request p. 3(7); exhibit C-3
4    SoC para. 10.



assigned the SPAC or concluded new ones, for instance with Pekka Rinne, before the issuance of the First Award.[5]

40    Jay Grossman is the owner and director of Respondent 1 and Respondent 2. He is moreover the only registered NHL agent of the players in question and has been the guarantor of the SPAC on behalf of Respondents. He has also been marketing both Respondents as one and the same legal entity on the most relevant website, i.e., the NHL Players Association (NHLPA).[6]

41    Jay Grossman who is a registered NHL player agent has misleadingly been marketing his business on the NHL Players Association website under two different company names (d/b/a meaning "doing business as") although "Puck Agency" has been no more than a marketing name. Respondent 1 is apparently almost empty and during the enforcement proceedings in the US it was found to have no bank account of its own anymore.[7]

42    Considering Jay Grossman's behaviour Respondent 1 transferred the player agent rights to Respondent 2 as foreseen under para. 2.11 of the Agreement and Respondent 2 has become a party to the Agreement alongside Respondent 1 and Claimant. The Agreement was either expressly assigned to Respondent 2 or must in light of the mentioned facts be deemed to have been effectively assigned.[8]

43    Accordingly, Respondent 2 shall be jointly and severally liable with Respondent 1 for all the compensation awarded to Claimant in the First Award, i.e., amounting with interest until 28 February 2022 to EUR 342,044 (USD 368,026.84) as well as for all further claims as requested in the present proceedings, i.e., the agent fees of the eight players named in the First Award from the date of the Frist Award, i.e. the 2018-2019 season, in the amount of EUR 533,243 (USD 573,750) calculated until the end of the 2022 season and EUR 58,087 (USD 62,500) for the 2022/ 2023 season. Claimant's claim against Respondents thus amount to totally EUR 933,374 (USD 1,004,276).[9]

44    In addition to the above, Claimant claims from Respondents interest on its share of the agent fees for the 2018 – 2023 seasons until the payment date as well as reimbursement of all its legal costs and attorney's fees, plus statutory interest.[10]

45    Claimant also states that no interest was awarded in the First Award on the amount of EUR 10,266.75 which corresponds to 25% of the sole arbitrator's fees and costs of EUR 40,067. According to Section 7 of the Finnish Interest Act, delay interest

5    SoC paras. 11-13, 18; exhibits C-4, C-7, C-11A, C-11B.
6    SoC paras. 14-15; exhibits C-11, C-5.
7    SoC paras. 16-17; exhibit C-6.
8    SoC paras. 11, 19-22.
9    SoC paras. 23-24, Request, p. 4(5), p. 6(1), 6(2); Annex 3.
10   Request p. 6(2).



may always be ordered to start to accrue thirty days after the claim was presented in evidence. Claimant, however, requests that interest on the arrears of EUR 10,266.75 only be payable thirty days from the date of the final award to be issued in these proceedings (Section 4(1) of the Finnish Interest Act). Interest on the cost of the proceedings shall be determined in accordance with this provision which foresees for the payment of interest thirty days after an arbitral award or judgment has been rendered.

## 1.2  Respondent's Position

46  Respondent did not file any brief or otherwise comment on Claimant's position.

## 1.3  Analysis by the Sole Arbitrator

47  Claimant claims for payment by JMG jointly and severally with Puck of the amounts awarded in the First Award issued by the sole arbitrator in the Fist Arbitration Proceedings where Puck was held in breach of the Agreement and ordered to pay USD 76,616 with 5% interest on the amount from 5 July 2017 until payment is made and USD 171,919.60 with 5% interest on this amount from 5 July 2018.

48  Claimant alleges that Jay M. Grossman has been using two companies, Puck and JMG, for doing business. Claimant moreover holds that the companies have been marketed as one and the same legal entity using the expression d/b/a, namely on the NHLPA website. To support its allegation Claimant submitted the printout and/or photograph of said website as exhibits C-5A and C-5B.

49  Pursuant to Wolters Kluwer[11] every business has a "legal" or "true name". In the case of a sole proprietorship or partnership, that legal name is the name of the business owner or owners. In the case of a corporation, limited liability company (LLC) or other statutory entity, the legal name is the one on its formation document (e.g., its articles of incorporation or articles of organization).

50  An individual or business entity can also choose to conduct business under a name that is different than its legal name by filing a DBA. DBA stands for "doing business as". A DBA name is also referred to as a "trade name", "assumed name", or "fictitious business name".

51  Pursuant to the Bank of America[12] a DBA brands a company and, unlike an LLC, it doesn't establish your business as a legal entity. Forming an LLC generally will shield your personal assets (in excess of any funds invested in your LLC) if the

---

11  https://www.wolterskluwer.com/en/expert-insights/what-is-dba-when-to-file-one-for-your-business#:~:text=DBA%20stands%20for%20%E2%80%9Cdoing%20business,other%20than%20its%20legal%20name., last visited on 28 December 2023.

12  https://www.bankofamerica.com/smallbusiness/resources/post/what-is-a-dba-what-does-it-mean-for-your-business/, last visited on 29 December 2023.

company is sued. A DBA is a nickname or alias used to brand and market your business.

52  Pursuant to the bank document submitted by Claimant as exhibit C-7 the holder of said account is "*JMG SPORTS AGENCY INC. DBA PUCK AGENCY*". This document is clear evidence that JMG has been acting (also) under the name Puck Agency at least since 19 April 2017 maybe even for longer. In other words, it must be assumed that JMG and Puck have been one and the same legal entity at least since 19 April 2017. Based on Claimant's submissions and evidence on file the Sole Arbitrator cannot determine whether Puck has ever existed as a separate legal entity or if it had always been JMG doing business as Puck.

53  If JMG has always been doing business as Puck and Puck never existed JMG is liable for the payments ordered in favor of Claimant in the First Award be it under the name of JMG or the name of Puck. If Puck never existed, it is again JMG, under its own name or the name of Puck, that is under the obligation to pay Claimant.

54  If Puck had existed and concluded the Agreement with Claimant, i.e., if JMG and Puck were or are still two different legal entities the Sole Arbitrator would nonetheless reach the same decision based on the following reasons:

55  Para. 2.11. of the Agreement states that

*"Both parties may assign this Agreement to their successors. This Agreement shall be binding on any successor whether by merger, consolidation, acquisition of substantially all of a party's assets or business or otherwise, as fully as if such successor were a signatory hereto, and the party shall cause such successor to, an such successor shall, expressly assume the party's obligations hereunder."*

56  Given that JMG concluded the SPAC with Pekka Rinne on 25 September 2018 and that Pekka Rinne was requested to pay JMG the invoiced agent's fees the Sole Arbitrator considers it established that Puck had in fact assigned its rights and obligations under the Agreement to JMG.[13] Accordingly, JMG is required per para. 2.11. of the Agreement to compensate Claimant for the commission it is owed under the Agreement.

57  If Puck had assigned its rights and obligations to JMG and if JMG tried to evade its payment obligations by ridding itself of any assets, Puck could still be held responsible for any commission payment based on the theory of piercing the corporate veil.

58  Pursuant to the Finnish Supreme Court's landmark decision (KKO 2015:17) the veil piercing requirements can be defined as follows:

---

13   Exhibits C-4A, C-11B.



1. The use of corporate group structure, intercorporate relationships or shareholder's control;

2. in a way that is artificial and reprehensible;

3. causing damage to the corporation's creditors or evasion of a legal duty.

59  If JMG and Puck were two different existing legal entities, they are affiliates as they are both under the control of Jay M. Grosman. If, however, the intention behind the transfer of the rights under the Agreement to JMG had only been done to avoid having to pay Claimant the commission by for instance emptying JMG of all its assets Claimant should still be in a position to claim commission from Puck.

60  It follows that JMG is liable jointly and severally with Puck for the payment of the amounts awarded in the First Award issued by the sole arbitrator in the First Arbitration Proceedings where Puck was held in breach of the Agreement and ordered to pay USD 76,616 with 5% interest on the amount from 5 July 2017 until payment is made and USD 171,919.60 with 5% interest on this amount from 5 July 2018.

61  As for the Claimant's claim in the amount of EUR 10,266.75, the Sole Arbitrator notes that the First Award did not order Puck to pay to Claimant the amount of EUR 10,266.75. While the sole arbitrator after fixing the arbitration costs in an amount of EUR 41,067 in para. 157, held in in para. 165 of the First Award, that "*Based on this outcome, the Sole Arbitrator finds that, as between the parties, PSS should be liable to pay 1/4 and Puck should be liable to pay 3/4 of the Costs of the Arbitration*", no specific order for payment was included in the dispositive section of the First Award.

62  The dispositive section of the First Award stated that "*The Parties are jointly and severally liable to pay the following Cost of the Arbitration. (i) The fee of the Sole Arbitrator Henrik Fieber amounting to 40,000.00 EUR. (ii) Compensation for the Sole Arbitrator's expenses amounting to 1067.00 EUR As between the parties, Professional Sports Services FI Oy is liable to pay 1/4 and Puck Agency LLC is liable to pay 3/4 of the Costs of the Arbitration.*"

63  Therefore, the Sole Arbitrator considers that the claim for EUR 10,266.75 has already been awarded in the First Award and the principle of *res iudicata* applies.

64  Thus, the Sole Arbitrator finds that, as for the commission amounts awarded by the First Award, JMG is jointly and severally liable with Puck for the payment of the arbitration costs of the First Arbitration Proceedings as held by the sole arbitrator in the First Award.

2. **Claimant's Entitlement to Post-expiration Commission for the Hockey Seasons 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023**

2.1 **Claimant's' Position**

65  Claimant and Respondent 1 concluded the Agreement. Since Claimant and Respondent 1 failed to reach an agreement regarding the payment of agent fees under the Agreement the matter was brought before a sole arbitrator which issued the First Award.[14]

66  Pursuant to paras. 2.4 and 2.6.4 of the Agreement and the decision rendered in the First Award Claimant is entitled to receive contractual compensation in the amount of 50% of all agent fees received by Respondent 1 as long as the latter represents the following players: Pekka Rinne, Erik Haula, Vili Saarijärvi, Juha Lammikko, Kasimir Kaskisuo, Juuso Välimäki, Sebastian Repo and Sami Niku. All those players were RF customers at the end of the cooperation between the Parties.[15]

67  The agent fees are calculated based on each player's gross salary from which the so-called escrow payments under the NHL/ NHLPA Collective Bargaining Agreement are deducted. To prevent NHL clubs from making losses NHL clubs and players agreed on a 50-50 salary cap and profit sharing: players' fees may not exceed half of the clubs' combined result for each season. A certain percentage of the players' salary is therefore held in escrow until the full revenue for the total season is known. Depending on the actual NHL revenues the players will, at the end of the season, receive either all or a portion of the amount held in escrow back. A summary of the final agent fees is found in exhibit C-8.[16]

68  The withheld and final escrow percentages for the relevant seasons were the following:[17]

2018/ 2019 season:    9.56%

2019/ 2020 season:    10%

2020/ 2021 season:    20%

2021/ 2022 season:    17.2%

2022/ 2023 season:    10%.

69  As Jay Grossman has never made his written agent contracts available, Claimant made its calculations based on the publicly available salary information of each of the NHL players in question and deducted from it the final escrow amount as

---

14    SoC paras1-4; exhibits C-1, C-2.
15    SoC paras. 6-8, 25, Request p.4(3).
16    SoC paras. 25-29 ; exhibit C-8.
17    SoC para. 30 ; exhibit C-8.



determined above. No such deduction was made if the player in question only played in the AHL irrespective of his NHL contract. If a player played in both leagues during the season the escrow amount for this season was deducted from both salaries.[18]

70   The player's agent fees usually equal 5% of the player's gross income before taxes unless otherwise agreed. For Pekka Rinne the agent fee was agreed to amount to 3% for the 2018/ 2019 and 2.5% for the 2019/ 2020 and 2020/ 2021 seasons.

71   With respect to the player Sami Niku Claimant is in possession of a letter from Jay Grossman detailing the agent fees and escrow invoiced by Respondent 2 for the 2018/ 2019 and 2019/ 2020 seasons.[19]

72   Claimant deducted 25% of marketing costs from the commission it is due for each season as is foreseen under para. 2.5 of the Agreement. Respondents failed to invest USD 10,000 annually in hockey players marketing cooperation in Finland as required by para. 2.5 of the Agreement. Therefore, Claimant added this sum to the amount due for each year.[20]

73   Claimant is therefore entitled to the amounts below for the 2018-2023 seasons:[21]

2018/ 2019 season: 200,430 x 0,75 = 150,322.50 + 10,000 = 160,322.50 USD

2019/ 2020 season: 162,020 x 0,75 = 121,515.00 + 10,000 = 131,515.00 USD

2020/ 2021 season: 107,950 x 0,75 = 80,962.50 + 10,000 = 90,962.50 USD

2021/ 2022 season: 64,687.50x 0.75 = 48,515.62 + 10,000 = 58,515.62 USD

2022/ 2023 season: 53,437.50 x 0.75 = 40,078.12 + 10,000 = 50,078.12 USD

74   Under para. 2.4.9 of the Agreement the receivables were to be distributed annually on 30 June and would become due within five days, i.e., on 5 July of the same year. Para. 2.4.9 of the Agreement also provides for an annual delay interest rate of 5%. The decision issued by the sole arbitrator in the First Award is in line with this provision.[22]

## 2.2   Respondents' Position

75   Neither Respondent filed any brief or provided otherwise any comments on Claimant's position.



---

18   SoC paras. 31-32, 35-36; exhibit C-9
19   SoC para. 37; exhibit C-10.
20   SoC paras. 38-40.
21   SoC para. 41.
22   SoC paras. 42-43.

### 2.3 Analysis by the Sole Arbitrator

76 The Sole Arbitrator notes that the Agreement[23] as also held by the sole arbitrator in the First Award[24], was validly concluded by Claimant and Puck. With respect to the claimed commission, it is stipulated in para. 2.4.1. of the Agreement that all player contract fees shall be divided as follows:

*"PSS shall receive 50% of the player contract and endorsement fees received by Puck for a RF client for as long as the RF client is represented by Puc[k]".*

77 The Agreement expired in 2017 wherefore para. 2.6.4. of the Agreement is of relevance. Said provision foresees that:

*In the event that this Agreement is terminated for whatever reason, the parties are entitled to receive their portion of each RF client's fees for as long as said client is represented by Puck or PSS in accordance with the terms of this Agreement."*

78 The wording of this provision is unambiguous and as also held by the sole arbitrator in the First Arbitration Proceedings, the contractual terms do not distinguish and provide for different commission payments depending on whether the contract was terminated or simply expired, as is the case here.[25] The insertion of such a contractual term would otherwise not make any sense.

79 In the First Arbitration Proceedings the sole arbitrator found *"that Claimant has the right to future commissions for so long as the following players are represented by Puck Agency LLC: Pekka Rinne, Erik Haula, Vili Saarijäärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki, Sebastian Repo and Sami Niku".*[26]

80 The Sole Arbitrator notes that this conclusion and findings by the sole arbitrator in the First Arbitration Proceedings are based on the language of para. 2.6.4. of the Agreement. The Sole Arbitrator also notes that the sole arbitrator in the First Arbitration Proceedings has come to this conclusion after a thorough analysis of the contractual terms and the intent of the Parties following an exchange of briefs and a hearing. The Sole Arbitrator agrees with these findings and conclusions and is convinced that the Parties intended for the payment of a commission amounting to *"50% of the player contract and endorsement fees received by Puck for a RF client"* to Claimant also *after* the expiry of the Agreement as long as the RF clients are still represented by Puck.

81 Furthermore, also based on these findings of the sole arbitrator in the First Arbitration Proceedings the Sole Arbitrator considers it to be established that the eight players named above are so-called RF clients.

---

23 Exhibit C-1.
24 Exhibit C-2.
25 Exhibit C-2, para. 132 et seqq ; decision no 3
26 Exhibit C-2, para. 132 et seqq ; decision no 3.

82    For Claimant to be in a position to claim the payment of commission for the seasons 2018 to 2023 the Sole Arbitrator must be convinced that the eight RF clients named in the First Award were still represented by Puck during the relevant seasons for which commission is claimed.

## 2.3.1 Claimant's Right to Commissions for the Player Pekka Rinne

83    As for the player Pekka Rinne Claimant requests commission for the 2018-2019, 2019-2020 and the 2020-2021 seasons. Claimant submitted the standard player-agent contract ("**SPAC**") concluded between Pekka Rinne and Puck on 9 September 2011 and Pekka Rinne and JMG on 25 September 2018 respectively.[27]

84    Under section 5 "*Term*" of both SPACs concluded between Pekka Rinne and Puck on the one hand and Pekka Rinne and JMG on the other hand this "*Agreement shall begin on the date hereof and shall continue in effect only until the expiration date of the Player contract executed pursuant to this Agreement*".[28]

85    Under the standard contract (extension) documents[29] Pekka Rinne signed a 7-year contract with the Nashville Predators on 4 November 2011. The first season Pekka Rinne played for the Nashville Predators was the season 2012-2013. Since Pekka Rinne seemingly stayed with the Nashville Predators for seven seasons the 2018-2019 season was still part of the contract signed on 4 November 2011. Under section 5 of the SPAC concluded with Puck Pekka Rinne was therefore, since the player contract executed pursuant to the Agreement was still in effect during the 2018-2019 season, a client of and required to pay Puck and/or JMG commission for the 2018-2019 season.

86    Subsequently, Pekka Rinne concluded the SPAC with JMG and signed a 2-year contract with the Nashville Predators on 2 November 2018.[30] Pursuant to section 5 of the SPAC concluded with JMG Pekka Rinne was hence a client of and required to pay JMG commission for the seasons 2019-2020 and 2020-2021.

87    In addition, to the SPACs and the standard contract (extension) documents Claimant submitted several invoices issued by Puck or JMG on several dates for the professional services rendered in connection with the negotiation of Pekka Rinne's contract with the ice hockey club Nashville Predators. While most of the documents submitted concern the years 2016 and 2017 and are therefore not relevant to the season 2018-2019 or any successive seasons, one of the invoices submitted was issued by JMG on 1 December 2019 and accordingly further proves that Pekka Rinne was a client of JMG in 2019.[31]

---

27    Exhibits C-11A, C-11B.
28    Exhibit C-11A, C-11B.
29    Exhibit C-9A.
30    Exhibit C-9A.
31    Exhibit C-4A.

88    Given the evidence submitted, namely the SPACs, for Pekka Rinne and based on the standard contract (extension) documents the Sole Arbitrator is convinced that Pekka Rinne was represented by Puck and/or JMG during the 2018-2019, 2019-2020 and 2020-2021 seasons.

### 2.3.2 Claimant's Right to Commissions for the Player Sami Niku

89    As for the player Sami Niku Claimant requests commission for the seasons 2018-2019 and 2019-2020. Claimant has submitted a letter from Jay M. Grossman to Sami Niku dated 30 June 2020 wherein the former requested Sami Niku to pay the outstanding amounts for the professional services rendered in connection with Sami Niku's NHL contract with the ice hockey club Winnipeg Jets for amongst others the seasons 2018-2019 and 2019-2020. In addition, Sami Niku was provided with an invoice for the payment of the mentioned commission to JMG.[32]

90    Pursuant to the contract history (entry-level contract) documents[33] Sami Niku signed a 3-year contract with the Winnipeg Jets on 15 May 2017. On 29 October 2020 Sami Niku signed a further 2-year contracts with the Winnipeg Jets.

91    Considering the letter dated 30 June 2020 sent from Jay M. Grossman to Sami Niku as well as the contract history (entry-level contract) documents, the Sole Arbitrator does not doubt that Sami Niku was represented by Puck and/or JMG during the 2018-2019 and 2019-2020 seasons.

### 2.3.3 Claimant's Right to Commissions for the Players Erik Haula, Vili Saarijärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki and Sebastian Repo

92    Except for Pekka Rinne and Sami Niku Claimant has not provided explicit documentary evidence in support of its claim that the remaining six RF players were still represented by Puck during the hockey seasons 2018-2019, 2019-2020, 2020-2021, 2021-2022 and 2022-2023.

93    Pursuant to the standard contract (extension) and contract history (entry-level contract) documents submitted by Claimant as exhibits C-9A to C-9H the players Erik Haula, Vili Saarijärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki and Sebastian Repo seemed to have played for the clubs below during the following seasons:

- Erik Haula signed a 3-year contract with the Vegas Golden Knights on 21 June 2017, a 1-year contract with the Nashville Predators on 23 December 2020 and a 2-year contract with the Boston Bruins on 28 July 2021;[34]

---

32    Exhibit C-10.
33    Exhibit C-9H.
34    Exhibit C-9B.



- Vili Saarijärvi signed a 3-year contract with the Detroit Red Wings on 2 July 2015;[35]

- Juho Lammikko signed a 3-year contract with the Florida Panthers on 15 April 2016. On 24 November 2020 and 28 July 2021 respectively, Juho Lammikko signed further 1-year contracts with the Florida Panthers;[36]

- Kasimir Kaskisuo signed a 2-year contract with the Toronto Maple Leafs on 29 May 2018 and a 1-year contract with the Nashville Predators on 13 October 2020;[37]

- Juuso Välimäki signed a 3-year contract with the Calgary Flames on 21 July 2017. On 20 August 2021 Juuso Välimäki signed a further 2-year contract with the Calgary Flames;[38]

- Sebastian Repo signed a 3-year contract with the Florida Panthers on 2 July 2017. The contract was terminated on 20 December 2019.[39]

94    As already established in the First Award all eight RF players were already represented by Puck during the 2016-2017 and 2017-2018 seasons. Furthermore, the Sole Arbitrator notes that Claimant has only requested to receive commission for any of the mentioned players where they were or should have been - as can be inferred from the standard contract (extension) and contract history (entry-level contract) documents - employed by an NHL hockey club.

95    Given the evidence submitted by Claimant[40] and the fact that Claimant's allegations have remained undisputed by Respondents, the Sole Arbitrator is convinced that the eight RF players Pekka Rinne, Erik Haula, Vili Saarijäärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki, Sebastian Repo and Sami Niku were represented by Puck and/or JMG during the seasons for which Claimant claims commission. In addition, the Sole Arbitrator considers it to be established that Puck and/or JMG concluded the basically identical contracts with all the players it represented, i.e. similar to the SPAC concluded with Pekka Rinne[41]. This is evidenced by the SPACs concluded with Pekka Rinne on 9 September 2011 and 25 September 2018, i.e., seven years later, which are almost identical.

### 2.3.4 Claimant's Right to Commissions for the Seasons 2018-2023

96    Since the Sole Arbitrator considers it established that Puck and/or JMG were still representing the eight RF players during the seasons commission is claimed for

---

35    Exhibit C-9C.
36    Exhibit C-9D.
37    Exhibit C-9E.
38    Exhibit C-9F.
39    Exhibit C-9G.
40    Exhibits C-4A, C-9A to C-9H, C-10, C-11A, C-11B.
41    Exhibit C-11A, C-11B.



by Claimant and as it has already been held that Claimant is entitled to commission even after the expiry of the Agreement it must now be determined how much commission Claimant is owed.

97　Since Claimant has not received the contracts concluded between Puck and the RF players it holds that the commission it is owed is calculated in a first step as follows: The player's gross income of which the escrow amount (which differs for every season) is deducted forms the basis of the calculation. The agent commission amounts to 5% (or 3 and 2.5% for Pekka Rinne) of this sum. Claimant is the entitled to receive 50% of the agent commission.

98　Considering the calculations made by Jay M. Grossman in the letter sent to Sami Niku of 30 June 2020[42] as well as Schedule A to the SPACs concluded with Pekka Rinne[43] it becomes apparent that the salary relevant for the calculation of the agent commission is not the gross salary, but the revenue effectively received by the player in question. However, here Puck and/or JMG has not provided Claimant with any information at all regarding the amount of any commission payment it was owed or paid by any of the RF players nor presented any arguments in this sense to the Sole Arbitrator. For lack of information, it is hence impossible for Claimant to provide the Sole Arbitrator – except for the payments to Sami Niku for the 2018-2019 and 2019-2020 seasons – with accurate numbers for the salaries effectively received by the RF players.

99　The principle of loyalty, which is the Nordic equivalent of the good faith principle under civil law, is primarily focused on behavior and not only on contractual terms. The principle of loyalty requires that the parties to a contract have due regard to the other party's interests during the contract negotiations and performance, but also after the contract has been executed. The principle of loyalty promotes the realisation of an agreement by directing behaviour so that the other party's reasonable expectations will be met. Parties are, for example, obliged to contribute to the realisation of common goals and refrain from causing harm to the other party.[44]

100　Hence in application of this principle, the Sole Arbitrator understands that Puck and/or JMG had an obligation to submit the relevant information for Claimant to be in a position to calculate the commissions due to it. Considering Respondents' failure to do so the Sole Arbitrator must base her decision on Claimant's method to calculate the commission it is owed as it would be contrary to the principle of

---

42　Exhibit C-10.

43　Exhibit C-11A, C-11B.

44　Petra Sund-Norrgård, Antti Kolehmainen, Onerva-Aulikki Suhonen, *The Principle of Loyalty and Flexibility in Contracts*, University of Lappland (https://www.ulapland.fi/loader.aspx?id=ec90abd9-ff6d-49cd-bf4c-c5a80d363ba4 ).

loyalty to prevent Claimant from claiming any commission only because Puck and/or JMG abstained from providing Claimant with the necessary information.

101 The Sole Arbitrator is moreover convinced that the escrow percentage provided by Claimant is correct. The Sole Arbitrator also accepts the information that some players from time to time played in the AHL and not in the NHL and that as a result no escrow was deducted from their salaries.

102 Taking the numbers in the standard contract (extension) and contract history (entry-level contract) documents into consideration for determining the amounts Claimant is owed, the Sole Arbitrator finds that Claimant is owed the following amounts:

103 For the season 2018-2019:

| | Gross salary (USD) | Less escrow of 9.65% | Commission thereof | Amount due to Claimant |
|---|---|---|---|---|
| Pekka Rinne | 7,000,000 | 6,325,000 | 189,750 | 94,875 |
| Erik Haula | 2,750,000 | 2,484,625 | 124,231.25 | 62,115.63 |
| Vili Saarijärvi | 65,500 | | 3,125 | 1,562.50 |
| Juho Lammikko | 470,500 | 424,645 | 21,232.25 | 10,616.13 |
| Kasimir Kaskisuo | 100,000 | 90,350 | 4,517.50 | 2,258.75 |
| Juuso Välimäki | 620,000 | 560,170 | 28,008.50 | 14,004.25 |
| Sebastian Repo | 75,000 | | 3,750 | 1,875 |
| Sami Niku | 489,925 | | 24,496.25 | 12,248.13 |
| Totally | | | | 199,555.39 |

104 For the season 2019-2020:

| | Gross salary | Less escrow of 10% | Commission thereof | Amount due to Claimant |
|---|---|---|---|---|
| Pekka Rinne | 6,000,000 | 5,400,000 | 135,000 | 67,500 |
| Erik Haula | 2,750,000 | 2,475,000 | 123,750 | 61,875 |
| Vili Saarijärvi | 65,000 | | 3,250 | 1,625 |

| Kasimir Kaksisuo | 100,000 | 90,000 | 4,500 | 2,250 |
|---|---|---|---|---|
| Juuso Välimäki | 734,375 | 660,938 | 33,046 | 16,523 |
| Sebastian Repo | 75,000 | | 3,750 | 1,875 |
| Sami Niku | 414,890 | | 20,744. | 10,372 |
| Totally | | | | **162,020** |

105    For the season 2020-2021:

| | Gross salary | Less escrow of 20% | Commission thereof | Amount due to Claimant |
|---|---|---|---|---|
| Pekka Rinne | 4,000,000 | 3,200,000 | 80,000 | 40,000 |
| Erik Haula | 1,750,000 | 1,400,000 | 70,000 | 35,000 |
| Juho Lammikko | 725,000 | 580,000 | 29,000 | 14,500 |
| Kasimir Kaksisuo | 700,000 | 560,000 | 28,000 | 14,000 |
| Juuso Välimäki | 222,500 | 178,000 | 8,900 | 4,450 |
| Totally | | | | **107,950** |

106    For the season 2021-2022:

| | Gross salary | Less escrow of 17.2% | Commission thereof | Amount due to Claimant |
|---|---|---|---|---|
| Erik Haula | 2,250,000 | 1,863,000 | 93,150 | 46,575 |
| Juho Lammikko | 750,000 | 621,000 | 31,050 | 15,525 |
| Totally | | | | **62,100** |

107    For the season 2022-2023:



22 | 28

| | | of 10% | thereof | to Claimant |
|---|---|---|---|---|
| Erik Haula | 2,250,000 | 2,025,000 | 101,250 | 50,625 |
| Totally | | | | **50,625** |

108 Claimant argues that 25% of marketing costs must be deducted from the commission it is owed for each season as foreseen under para. 2.5 of the Agreement. Furthermore, since Respondents failed to invest USD 10,000 annually into the hockey players marketing cooperation in Finland as required by para. 2.5 of the Agreement such amount must be added to the amount due for each year.

109 Para. 2.5 of the Agreement foresees among others that

*"PSS agrees that it shall invest an amount equal to 25% of fees received from Puck in any calendar year annually for the parties to jointly promote their companies and services in Finland, including, but not limited to, recruiting, marketing, public relations, promotions, player camps, and obtaining equipment for players ("Marketing Money").*

*[...]*

*Puck agrees to also invest an amount of 10,000 USD annually to similar purposes than mentioned above, this money will be invested towards marketing purposes in Finland or in relation to Finnish prospects."*

110 The purpose of para. 2.5 of the Agreement was the joint promotion of the services offered by Claimant and Puck in Finland. The Agreement expired in 2017 and the Parties terminated their collaboration except for Puck's obligation to make the payments to Claimant as provided for in para. 2.6.4 of the Agreement. Since the Agreement does not contain any similar obligation about the promotional services the Sole Arbitrator is convinced that the Parties did not intend for their continuation. Accordingly, after the expiry of the Agreement neither Claimant nor Puck was required to invest any amount into the promotion of any services in Finland. Claimant is therefore not required to make any deduction from the sums it is owed nor is it entitled to receive an additional amount of USD 10,000 from Puck in this respect. That said, under the principle of no *ultra petita*, Claimant is entitled only to the payment of the amounts requested in its prayers for relief and not more.

111 Clause 2.4.9. of the Agreement provides as follows:

*"Fees received from clients shall be distributed annually on the 30th of June. Bonuses and other fees that cannot be distributed on the 30th of June shall be distributed annually on 15th of September. Both parties shall, upon reasonable*

*request, exchange a breakdown of the fees. In the event that payments are not received within five (5) business days of their due date, the Parties agree that interest at a rate of 5% per annum shall become due on all outstanding monies.*

*Both parties shall be responsible for their own expenses, unless otherwise agreed to by the Parties.*

*Notwithstanding the above, however, the parties agree fees received from clients with respect of the 2011-12 season shall be paid on or before January 31, 2013. All other fees shall be paid in accordance with this section 2.4.9."*

112 Therefore, in accordance with the Parties' Agreement, the outstanding commission amounts bear interest at the rate of 5% as of five business days after their respective dues dates, and as held above in para. 60, the Sole Arbitrator finds that Puck and/or JMG are jointly and severally liable for the payment of the following amounts:

- USD 160,322.50 with interest at 5% from 5 July 2019 for commission for the 2018-2019 hockey season;

- USD 131,515.00 with interest at 5% from 5 July 2020 for commission for the 2019-2020 hockey season;

- USD 90,962.50 with interest at 5% from 5 July 2021 for commission for the 2020-2021 hockey season;

- USD 58,515.62 with interest at 5% from 5 July 2022 for commission for the 2021-2022 hockey season; and

- USD 50,078.12 with interest at 5% from 5 July 2023 for commission for the 2022-2023 hockey season.

## K.   COSTS OF THE ARBITRATION

113 Pursuant to Section 46 of the FAA, unless otherwise agreed or provided, the parties shall be jointly and severally liable to pay compensation to the arbitrators for their work and expenses. The amount of the compensation to the arbitrators shall be reasonable, taking into account the time spent, the complexity of the subject-matter and the other relevant circumstances.

114 Unless otherwise provided in a manner binding on the arbitrators, the arbitrators may in their award fix the compensation due to each arbitrator and order the parties to pay (Section 47(1) of the FAA).

115 Considering the time spent by the Sole Arbitrator for these proceedings (over 60 hours), her hourly rate of CHF 500, the complexity of the dispute and the amount in dispute, the Sole Arbitrator determines her fees to amount to CHF 30'000 including incurred expenses for courier service in the total amount of CHF

1'082.33. The Parties shall be liable to compensate the Sole Arbitrator said amounts.

116 Section 49 of the FAA provides that unless otherwise agreed by the parties, the arbitrators may, in their award order a party to compensate, in whole or in part, the other party for its costs in the arbitration proceedings, in accordance, as appropriate, with the provisions of the Finnish Code of Judicial Procedure on the compensation for legal costs.

117 Chapter 21 Section 1 of the Finnish Code of Judicial Procedure provides that the party which loses the matter is liable for all reasonable legal costs incurred by the necessary measures of the opposing party unless otherwise provided for by a legal provision.

118 According to Chapter 21 Section 3 of the Finnish Code of Judicial Procedure if several claims have been made in the same matter and some of them are decided in favour of one party and some in favour of the other party, the parties are liable for their own legal costs unless there is a special reason for rendering a party liable, in part, for the legal costs of the opposing party. If the claim that a party loses is of minor significance only in the matter, he or she shall be entitled to full compensation for his or her costs. The provisions of subsection 1 shall correspondingly apply when the claim of a party is only partially upheld. In this event, however, full compensation of the costs of the party may be ordered also if the part of the claim that has not been upheld concerns solely a matter of discretion which has little bearing on the amount of the legal costs of the parties.

119 Under Chapter 21 Section 8 of the Finnish Code of Judicial Procedure compensable legal costs are the costs of the preparation for the proceedings and the participation in the proceedings, and the fees of the attorney or legal counsel. In addition, compensation shall be paid for work caused to the party by the proceedings and for losses directly linked to the proceedings. On request, the compensation for legal costs shall carry an annual interest in accordance with the reference rate referred to in section 4, subsection 3 of the Interest Act starting to accrue one month after the order to compensate was issued.

120 Claimant has filed its cost submission in the total amount of EUR 33,981.40 comprising legal costs in the amount of EUR 30,981.40 and the filing fee paid to the Finnish Chamber of Commerce inf the amount of EUR 3,000.

121 Respondents have filed no cost submission.

122 The Sole Arbitrator takes into consideration that Claimant prevails entirely in these proceedings and that Respondents have not participated at all.

123 Based on this outcome, the Sole Arbitrator finds that, Respondents shall be jointly and severally liable for the Costs of the Arbitration. Considering that Claimant has

also paid Respondents' share of the advance of costs, Respondents shall be ordered to reimburse to Claimant the amount of EUR 30'000.

124    Furthermore, Respodents have caused the proceedings to be necessary because of their disregard of the Agreement and their refusal to cooperate with Claimant and pay the commission amounts due, without cause. Therefore, the Sole Arbitrator finds that the Respondents shall be jointly and severally liable for the reimbursement of Claimant's arbitration costs. In the Sole Arbitrator's opinion, the legal fees claimed by Claimant are reasonable. Therefore, Puck and/or JBG shall be ordered to pay EUR 33,981.40 to PSS for its fees and expenses.



## L.    DISPOSITIVE SECTION OF THE FINAL AWARD

Based on the above considerations, examination, and reasoning and after having carefully considered all factual and legal allegations and arguments submitted by the Parties, even if not explicitly mentioned or discussed in this Final Award, the Sole Arbitrator issues the following

### AWARD

1) Puck Agency LLC and JMG Sports Agency Inc. are jointly and severally liable towards Professional Sport Service Fi Oy for the payment of all amounts awarded by the sole arbitrator in the Final Award dated 22 November 2018 in the *ad hoc* arbitration pursuant to the Finnish Arbitration Act Case no FAI 23/2018.

2) The Sole Arbitrator declares that JMG Sports Agency Inc., jointly and severally with Puck Agency LLC, is liable to pay commissions to Professional Sport Service Fi Oy for the NHL players Pekka Rinne, Erik Haula, Vili Saarijärvi, Juho Lammikko, Kasimir Kaskisuo, Juuso Välimäki, Sebastian Repo and Sami Niku.

3) Puck Agency LLC and JMG Sports Agency Inc. are ordered jointly and severally to pay to Professional Sport Service Fi Oy:

   - USD 160,322.50 as well as 5% interest on this amount from 5 of July 2019 until payment is made, to compensate Professional Sport Service Fi Oy for commissions during the 2018-2019 hockey season,

   - USD 131,515.00 as well as 5% interest on this amount from 5 of July 2020 until payment is made, to compensate Professional Sport Service Fi Oy for commissions during the 2019-2020 hockey season,

   - USD 90,962.50 as well as 5% interest on this amount from 5 of July 2021 until payment is made, to compensate Professional Sport Service Fi Oy for commissions during the 2020-2021 hockey season,

   - USD 58,515.62 as well as 5% interest on this amount from 5 of July 2022 until payment is made, to compensate Professional Sport Service Fi Oy for commissions during the 2021-2022 hockey season,

   - USD 50,078.12 as well as 5% interest on this amount from 5 of July 2023 until payment is made, to compensate Professional Sport Service Fi Oy for commissions during the 2022-2023 hockey season.

4) Puck Agency LLC and JMG Sports Agency Inc. are ordered jointly and severally to bear all the costs of the arbitration, including but not limited to the arbitrator's fee and to pay to Professional Sport Service Fi Oy EUR 30,000 as reimbursement for the advance payments, together with delay interest pursuant to the Section 4 (1) of

the Finnish Interest Act from one month of the date of the Award until the amount has been paid in full.

5) Puck Agency LLC and JMG Sports Agency Inc. are jointly and severally ordered to reimburse Professional Sport Service Fi Oy all its legal and other costs and expenses incurred in connection with this arbitral proceeding in the amount of EUR 33,981.40 together with delay interest pursuant the Section 4 (1) of the Finnish Interest Act from one month of the date of the Award until the amount has been paid in full.

6) All other requests for relief and claims are dismissed.

Place of arbitration: Helsinki, Finland

Date:  4. 1. 2024

The Sole Arbitrator

Raphaëlle Favre Schnyder

I confirm that the copy is accurate and genuine. At the same time, I confirm that this copy contains __26__ pages stamped with the agency's stamp.

Helsinki, Finland

**1 3 -03- 2024**

Ex officio:

æ __140__ €

TANJA TAMS
Johtava asiantuntija, julkinen notaari
Ledande sakkunnig, notarius publicus
Chief Specialist, Notary Public

# APOSTILLE

## (Convention de La Haye du 5 octobre 1961)

1. Maa:
   Land:
   Country:

   Suomi
   Finland

   Tämän yleisen asiakirjan
   Denna allmänna handling
   This public document

2. on allekirjoittanut
   är undertecknad av
   has been signed by

   Tanja Tams

3. toimiessaan
   i egenskap av
   acting in the capacity of

   Notary Public

4. Siinä oleva leima/sinetti on
   är försedd med stämpel/sigill av
   Bears the seal/stamp of

   The Digital and Population Data Services Agency

Todistetaan
Intygas
Certified

5.
   i
   at        Helsinki

6.
   den
   the       13.3.2024

7.
   av
   by        Elli Lehisto, Notary Public

8. No
   Nr        HB 2284/ 2024

9. Sinetti/Leima:
   Sigill/stämpel:
   Seal/Stamp:

10. Allekirjoitus:
    Underskrift:
    Signature:

    Elli Le

Tämä Apostille todistaa ainoastaan allekirjoituksen oikeaperäisyyden, missä ominaisuudessa yleisen asiakirjan allekirjoittaja on toiminut ja tarvittaessa yleisessä asiakirjassa olevan sinetin tai leiman.
Apostille ei todista oikeaksi sen asiakirjan sisältöä, johon se on liitetty.

Denna Apostille bevisar endast äktheten av underskriften och i vilken egenskap undertecknaren av det allmänna dokumentet har verkat, samt vid behov även äktheten av sigillet eller stämpeln i det allmänna dokumentet.
Apostillen bevisar ej äktheten av dokumentets innehåll till vilket det är bifogat.

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears.
This Apostille does not certify the content of the document for which it was issued.